UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA, ex. rel. et al.,

        Plaintiffs,

v.

FATME RAKINE et al.,

        Defendants.
_____/

Case No. 20-cv-11913

HON. MARK A. GOLDSMITH

**OPINION AND ORDER**
**(1) GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 54) AND DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERTS AS MOOT (Dkt. 48)**

Plaintiff-Relator Mohamad Ali Makki brought this action alleging that Defendants Fatme Rakine, Youssef Rakine, and Friendly Pharmacy, LLC engaged in fraud in violation of (i) the False Claims Act (FCA), 31 U.S.C. § 3729, and (ii) Michigan law. Before the Court is Defendants' motion to dismiss (Dkt. 54). For the reasons that follow, the Court grants Defendants' motion.[1]

**I. BACKGROUND**

Makki originally filed this sealed qui tam action on behalf of himself, the United States of America, and the State of Michigan on July 15, 2020. See Compl. (Dkt. 1). After the Court granted several of the Government's requests for extensions of the seal and election period for a potential Government intervention, see, e.g., 10/2/20 Order (Dkt. 5), the United States and

---

[1] Because oral argument will not aid the Court's decisional process, the issues will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Makki's response (Dkt. 55).

Because the Court grants Defendants' motion to dismiss, it also denies Defendants' motion to strike Makki's experts as moot (Dkt. 48).

1

Michigan declined to intervene in this action, and the Court unsealed the complaint and ordered service on Defendants, see 10/29/21 Order (Dkt. 19).

Makki alleges that he worked as a pharmacist at LifeCare Pharmacy of Michigan. Am. Compl. ¶ 31 (Dkt. 52). In that capacity, Makki had interactions with Fatme Rakine, who owns Friendly, and Fatme's husband, Youssef Rakine, who is alleged to have been a "silent partner" in Friendly. Id. ¶¶ 32, 12–13.

The Court proceeds by discussing (i) Makki's allegations that Defendants engaged in various fraudulent activities and (ii) Makki's claims based on those allegations.

### A. Alleged Fraudulent Activities

Makki submits that Defendants engaged in fraudulent activities that "are known to have occurred since at least 2012 in either individual or reoccurring instances." Id. ¶ 33. His accusations can be divided into three categories.

### 1. Reselling of Drugs Purchased at Discount

Makki submits that Fatme informed him that she was operating a fraudulent scheme through Friendly to purchase drugs at a discounted price under federal programs and then reselling those drugs on an online market (MatchRX):

> FATME informed Plaintiff-Relator that she was having her family members and friends purchase BCBS [Blue Cross Blue Shield of Michigan] insurance policies, upon which time FATME would then create fictitious prescriptions, such as Zovirax Ointment, A/K/A ACYCLOVIR Ointment, which is topically [sic] used to treat cold sores on the lips and face of individuals with such needs. . . .
>
> Instead of dispensing the billed drugs to the selected patients, FATME was listing those drugs on MATCHRX for a discounted price, in which she would receive 80 to 85 percent of the actual value of the drugs, in addition to the full dollar value FATME had received from Medicare, Medicaid and BCBS.

Id. ¶¶ 38–40.

Makki also alleges that, sometime after January 2018, Fatme "informed Relator of the illegal scheme [she] and her husband were carrying [out] through FRIENDLY." Id. at ¶ 44. Makki references a specific incident of this fraud involving Youssef: "FATME admitted that one of the 'Specialty Drugs' that her husband YOUSSEF obtained through the State of Michigan Patient Assistance Program was being sold on MATCHRX, and YOUSSEF was not taking the medication, he was only ordering it so that FATME could sell it online for monetary benefit." Id.

2. **Misrepresentations to FBI and Additional Overbilling of Federal Programs**

Makki further accuses Fatme and Youssef of lying to the FBI. He alleges that Fatme was interviewed by the FBI on January 16, 2018, "in the presence of her husband YOUSSEF who corroborated her false statements." Id. ¶ 42. Citing both his conversations with Fatme and an "FBI-302 report"—i.e., the report created by the FBI following this interview—Makki alleges that Fatme told the FBI that she "didn't carry ABILIFY in her pharmacy and never sold ABILIFY to anyone," that "her pharmacy didn't carry any NAME BRAND drugs," and that "she didn't know how to make an invoice." Id. ¶ 43.[2] Makki considers Fatme's assertions to be "false statements to federal agents," and Makki states that she made these false statements "in [the] presence and with the assistance of her husband YOUSSEF." Id.

Makki submits that he knows Fatme's statements were false because the pharmacy where he worked purchased Abilify from Friendly. Id. ¶ 41 ("On or around December 2015, LifeCare Pharmacy of Michigan, purchased three items from FRIENDLY, including the ABILIFY drug,

---

[2] "An FBI 302 is a form routinely used to memor[i]alize an FBI interview of a witness." United States v. Nathan, 816 F.2d 230, 232 n.1 (6th Cir. 1987). Defendants submit that the 302 interview referenced by Makki was held by the FBI as part of the Government's investigation into Makki's own fraudulent activities. See Mot. at 16–17. Defendants note that Makki pleaded guilty to conspiracy to commit health care fraud in Case No. 19-cr-20176, United States of America v. Makki et al. See id. at 7.

3

and FRIENDLY received a check for payment, that FATME requested to be made to her husband's, YOUSSEF, personal name."). Makki also submits that Fatme "admitted [to] lying to the agents" when speaking with Makki, and that "FATME indicated to Relator that she wanted to deter the agents from looking deeper into FRIENDLY . . . ." Id. ¶ 44.

Additionally, Makki alleges that MatchRx records will show that—contrary to Fatme's statements to federal agents—Friendly sold multiple packages of ABILIFY and "NAME BRANDED" drugs in 2013, 2014, and 2015. Id. ¶¶ 45–46. Makki states that these drugs are "believed to have been billed and paid for by Medicare, Medicaid and BCBS," but never dispensed to patients. Id. Makki also alleges that Fatme "informed Plaintiff-Relator that she never reported any of these sales to the STATE of MICHIGAN Treasury Department or to the United States Internal Revenue Service." Id. ¶ 47.

### 3. Money Laundering

Makki further alleges—based on Fatme's representations to him—that Fatme has "laundered close to $800,000" through her "healthcare fraud and diversion scheme[], and invested the laundered those proceeds [sic] into two Michigan Marijuana companies." Id. ¶ 48. Fatme then "invested the laundered proceeds into Healthy Labs, LLC," a company in Dearborn Heights, Michigan. Id. ¶ 50.[3]

### B. Claims

On these allegations, Makki asserts three violations of the FCA:

- Defendants "knowingly and/or recklessly presented or caused to be presented false or fraudulent claims for payment or approval for payment by government funds in violation of 31 U.S.C. § 3729(a)(1)(A)." Id. ¶ 52. This section of the FCA

---

[3] Makki also alleges that Fatme perpetrated this "laundering" scheme with the help of her niece, Rif Hamade-Mubarak, and provides details about Hamade-Mubarak's alleged circulation of "illegal narcotic prescriptions." Am. Compl. ¶¶ 48–49. Makki does not allege that the named Defendants are liable for Hamade-Mubarak's alleged scheme.

- establishes liability for someone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." § 3729(a)(1)(A).

- Defendants "knowingly made, used or caused to be made or used, a false record of statement to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(1)(B)." Am. Compl. ¶ 55. This section of the FCA establishes liability for someone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." § 3729(a)(1)(B).

- Defendants "have conspired with one another to conceal, omit, and alter material facts in order to present, or cause to be presented false and fraudulent claims for payment," and they "conspired together and knowingly, willfully withholding information specifically known to Defendants regarding the systematic fraudulent conduct in unlawful billing," all in violation of § 3729(a)(1)(C). Am. Compl. ¶¶ 59–62. This section of the FCA creates liability for someone who "conspires to commit a violation" of another subparagraph of § 3729(a)(1), including sub-paragraphs (A) and (B). § 3729(a)(1)(C).

Makki also brings state-law claims under (i) the Michigan Medicaid False Claims Act, Mich. Comp. L. § 400.601, et seq., see Am. Compl. ¶¶ 63–71, and (ii) a theory of unjust enrichment, see id. ¶¶ 72–74.

## II. ANALYSIS[4]

Defendants assert two grounds for dismissal: (i) this Court lacks subject matter jurisdiction because Makki is not the "original source" of the information underlying his FCA claims, and (ii) Makki's FCA allegations do not satisfy Federal Rule of Civil Procedure 9(b)'s pleading requirements. The Court addresses each argument and then considers Makki's state-law claims.

---

[4] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

### A. Jurisdiction

"[T]he FCA precludes a federal court from exercising jurisdiction over allegations in a qui tam suit that are based upon publicly-disclosed information, unless the relator is the original source of that information." U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 645 (6th Cir. 2003) (citing 31 U.S.C. § 3730(e)(4)(A)). A court must dismiss an FCA claim brought by a plaintiff other than the Attorney General "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in any of various ways, "unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).[5] This inquiry requires a court to "determine whether there had been any public disclosures from which fraud might be inferred before the filing of the qui tam complaint"—i.e., "information []

---

[5] Section 3730(e)(4)(A) is applicable if substantially the same allegations were publicly disclosed:

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media.

§ 3730(e)(4)(A)(i)–(iii).

An "original source" is defined as:

> . . . an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

§ 3730(e)(4)(B).

sufficient to put the government on notice of the likelihood of related fraudulent activity." United States ex rel. Rahimi v. Rite Aid Corp., 3 F.4th 813, 823 (6th Cir. 2021) (punctuation modified).

Under this standard, a court confronted with an FCA claim "must determine the following: (1) whether there was a public disclosure, (2) whether [allegations in the complaint] were 'based upon' that public disclosure, and (3) whether Relator was an original source of the information." Bledsoe, 342 F.3d at 645.

Defendants argue that this Court lacks subject matter jurisdiction over this suit because Makki is not the "original source" of the information in his allegations. See Mot at 15–18. They submit that Makki "relies" on: (i) "information obtained from websites like MatchRx, which allows pharmacies to lawfully sell medications to other pharmacies"; and (ii) a "statement allegedly made by Defendant Fatme Rakine to a government agent in a 302 interview." Id. at 15.

Defendants' argument lacks merit. Makki's FCA claims are based on his allegations that Defendants made "false or fraudulent claim[s]," see 31 U.S.C. § 3729(a)(1)(A)–(C)—specifically, that Defendants purchased drugs at a discount by misrepresenting information about the recipients of those drugs and then resold them online for a profit.[6] Makki submits that he learned about this fraudulent activity from his personal interactions with Defendants. Defendants have not identified any "publicly disclosed" source that makes "substantially the same allegations" as Makki presents in support of his FCA claims. 31 U.S.C. § 3730(e)(4)(A).

Defendants challenge Makki's approach of "pulling information from a website designed for pharmacies (MatchRx) and making inquiries about particular drugs bought, sold, or charged to customers or payers." Mot. at 17–18 (citing Rahimi, 3 F.4th at 830). Defendants thus challenge

---

[6] Defendants' argument that Makki was not the "original source" is also targeted, in part, at Makki's allegation that Fatme and Youssef lied to FBI agents during the 302 interview. However, for the reasons discussed below, this allegation does not state a cognizable FCA claim anyway.

7

Makki's reference to a public website as the medium for Defendants' allegedly fraudulent activities. But "mere reference to public documents is not an automatic bar to original-source status." Rahimi, 3 F.4th at 830. In the case cited by Defendants, the court found that the plaintiff did not qualify as the original source of information underlying FCA claims where the plaintiff's "investigation boiled down to calling various Rite Aid pharmacies and inquiring about particular drug prices charged to customers." Id. In contrast, to the extent that Makki's references to MatchRx support an FCA claim, they merely provide context for allegations plausibly based on Makki's personal knowledge. See, e.g., Compl ¶ 40 (alleging that Makki learned from interactions with Fatme that she "was listing those drugs on MATCHRX for a discounted price").

Defendants also argue that Makki is not the original source of the information taken from the 302 interview, which Makki "received . . . as part of his criminal case because the government is required to turn it over as part of discovery." Mot. at 17–18. But Defendants do not argue that the FBI interview was "a public disclosure," Bledsoe, 342 F.3d at 645, and their assertions that (i) Makki obtained this information only through criminal discovery and that (ii) Makki did not disclose to Defendants the entirety of the 302 interview materials indicate that this source is not public at all. See Mot. at 18.[7]

None of Defendants' arguments indicates that "public disclosures" independent of Makki's qui tam complaint "put the government on notice of the likelihood of . . . fraudulent activity" related to the drug purchases alleged by Makki. Rahimi, 3 F.4th at 823 (punctuation modified);

---

[7] The United States Court of Appeals for the Sixth Circuit has held that publicly disclosed sources "include[] documents that have been filed with a court, such as discovery documents and a plaintiff's complaint." U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc., 123 F.3d 935, 939 (6th Cir. 1997), abrogated on other grounds by Rahimi, 3 F.4th 813. Defendants, however, do not represent that the 302 interview report was filed with a court such that it became public, and their purported lack of access to the full document indicates that it was not. See Mot. at 18.

see also U.S. ex rel. Pogue v. Am. Healthcorp, Inc., 977 F. Supp. 1329, 1336–1339 (M.D. Tenn. 1997) (finding that court had subject matter jurisdiction over FCA claim based on allegations that defendants "defrauded the United States by filing claims for Medicare and Medicaid reimbursement for services provided to diabetes patients who were illegally referred to the various treatment centers" where public information in company's annual reports, prospectuses, and news reports were insufficient to "put the reader on the trail of the alleged illegal referral scheme"). Makki has plausibly alleged that his personal knowledge provides the basis for his FCA claims. See U.S. ex rel. Robinson-Hill v. Nurses' Registry & Home Health Corp., No. 08-145, 2012 WL 4598699, at *13 (E.D. Ky. Oct. 2, 2012) (denying motion to dismiss FCA claim for lack of jurisdiction, stating: "Relators allege that their knowledge about Defendant's upcoding comes from direct personal knowledge. . . . At this stage in the proceeding, the Court must accept those factual allegations as true."). This Court has jurisdiction.

### B. Rule 9(b) Pleading Requirements

Defendants argue that Makki has not met the pleading requirements of Rule 9(b), which apply to FCA actions. See Mot. at 10–13. Makki was put on notice of the charge that his allegations were insufficient under Rule 9(b), and he has already amended his complaint in response to that argument.[8] As demonstrated by Defendants' case law, to survive Rule 9(b), a plaintiff asserting an FCA claim must allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement

---

[8] After Defendants filed their first motion to dismiss—arguing in part that Makki's allegations did not comply with Rule 9(b) (Dkt. 49)—this Court entered an order authorizing Makki to amend his complaint to cure those alleged defects, see 2/10/23 Order (Dkt. 50). Makki has thus already had the opportunity to "obviate the claimed deficiencies in his pleading" by amending his pleading. Id. at 1. Makki took advantage of that opportunity by amending his complaint, after which the Court denied Defendants' first motion to dismiss without prejudice (Dkt. 53), and Defendants filed their renewed motion to dismiss now before this Court.

9

and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the government, and (4) what the defendants obtained as a consequence of the fraud.

Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) (punctuation modified).

"[A]t a minimum, the complaint must "allege the time, place, and content of the alleged misrepresentation on which [the relator] relied," and a "relator cannot meet this standard without alleging which specific false claims constitute a violation of the FCA." U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 505 (6th Cir. 2007) (punctuation modified, emphasis in original). A "[r]elator's failure to identify with particularity any actual false claims that the defendants submitted to the government is, ultimately, fatal to his complaint," id. at 504 (punctuation modified)—with possible exceptions for unique circumstances not applicable here, like one in which the relator has "identified specific confidential documents that contained the evidence of false claims . . . in the exclusive control of the defendant," id. at 504 n.12.

Makki's allegations of false or fraudulent claims that are potentially cognizable under the FCA amount to the following:

- Defendants "creat[ed] fictitious prescriptions," including for "Zovirax Ointment," which Defendants sold on MatchRx for a discounted price. Am. Compl. ¶¶ 38–40. Defendants have been submitting these fraudulent claims "since at least 2012." Id. ¶ 33.
- Makki learned some time after January 2018 that Youssef was personally obtaining drugs that Fatme then sold online at a profit. Id. ¶ 44.
- Friendly sold multiple packages of ABILIFY and "NAME BRANDED" drugs in 2013, 2014, and 2015, which are "believed to have been billed and paid for by Medicare, Medicaid and BCBS," but never dispensed to patients. Id. ¶¶ 45–46.
- Fatme "laundered" and reinvested "close to $800,000" through the "healthcare fraud and diversion scheme" described throughout the complaint. Id. ¶ 48.[9]

---

[9] Makki also alleges that Fatme, with Youssef's assistance, misrepresented to the FBI during the January 16, 2018 interview that her pharmacy did not carry Abilify or name brand drugs. Id. ¶¶ 42–43. This allegation does not state a claim that Defendants made "false or fraudulent claim[s]" under § 3729(a)(1)(A), (B), or (C). The term "claim" is defined as a "request or demand . . . for

10

As Defendants' caselaw amply demonstrates, these allegations cannot withstand Rule 9(b). In Sanderson, for example, the plaintiff alleged that his employer, a hospital chain, "had overcharged the government for reimbursements" through programs including Medicare and Medicaid by fraudulently "allocat[ing certain] corporate debt among the individual hospitals based on the percentage of Medicare-eligible service the hospitals provided." 447 F.3d at 875. The Sixth Circuit affirmed dismissal based on the plaintiff's failure to comply with Rule 9(b), and the court's holding applies with equal force here:

> [T]he plaintiff's complaint does not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government and relies instead exclusively on conclusory allegations of fraudulent billing. . . .
>
> Rule 9(b) does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.

Id. at 877 (punctuation modified).

Makki has not identified any specific claim fraudulently submitted to the Government, nor the date of any such claim. Like in Sanderson and several consistent cases, the lack of specificity in his allegations of fraud dooms his FCA claims. See, e.g., Bledsoe, 501 F.3d at 497–498, 514–515 (reversing dismissal of one FCA claim under Rule 9(b) where the relator pleaded specific information including "the date of the false claim," but affirming dismissal of various other claims where (i) "[t]here [was] no allegation that any particular claim was submitted pursuant to [] allegedly fraudulent schemes," (ii) "Relator d[id] not identify any specific instance where Medicare or Medicaid was wrongfully billed," and (iii) the complaint "lack[ed] specific dates or

---

money or property." § 3729(b)(2)(A). Without an allegation that the supposed lies to the FBI were connected to a demand or request for money or property, Makki has no FCA claim on this basis.

claims submitted to Medicare or Medicaid"); U.S. ex rel. Howard v. Lockheed Martin Corp., 499 F. Supp. 2d 972, 980 (S.D. Ohio 2007) (dismissing claims brought under § 3729(a) pursuant to Rule 9 "because Relators did not plead presentment to the United States with particularity").

Makki insists that he "can prove at trial that Defendant Rakine, with the assistance of her husband, Defendant Youssef Rakine, was hiding from the eyes of the auditors." Resp. at 9–10. He objects to Defendants' expectation that "Plaintiff's burden in the entire investigation [is] to show exactly why they are guilty prior to trial." Id. at 10 (emphasis in original). He states that whether "Plaintiff has failed to meet his burden of proof under the False Claims Act . . . is a question of fact for trial." Id. Citing Sanderson, Bledsoe, and Howard—and no additional cases—Makki argues that he has complied with the Rule 9 requirements because he has "identified the claims that were made," explained "how they were made," and "elaborated the method in which the Defendants gained profits from their 'unused' Rx prescriptions." Id. at 12.

Makki is incorrect that Rule 9(b) allows him to reach trial by pleading that Defendants submitted unspecified fraudulent claims over a general, years-long timeframe, even if it were true that he "describe[d] [the] private scheme in detail." Sanderson, 447 F.3d at 877. Makki's "failure to identify with particularity any actual false claims that the defendants submitted to the government is, ultimately, fatal to his complaint." Bledsoe, 501 F.3d at 504 (punctuation modified). The Court dismisses Makki's FCA claims.

C. **Dismissal of State-Law Claims Without Prejudice**

Defendants request dismissal of Makki's state-law claims under 28 U.S.C. § 1367. See Mot. at 19–20. The Court agrees that this approach is proper, and it dismisses without prejudice Makki's Michigan Medicaid False Claims Act claim and unjust enrichment claim.

12

## III. CONCLUSION

For the reasons explained above, the Court grants Defendants' motion to dismiss (Dkt. 54). The Court dismisses with prejudice Makki's FCA claims, and it dismisses without prejudice his Michigan Medicaid False Claims Act claim and unjust enrichment claim. Because the Court grants Defendants' motion to dismiss, it also denies Defendants' motion to strike Makki's experts as moot (Dkt. 48).

SO ORDERED.

Dated: September 6, 2023                           s/Mark A. Goldsmith
           Detroit, Michigan                                MARK A. GOLDSMITH
                                                                     United States District Judge